Argued March 3, affirmed March 29, 1921.

# MONTGOMERY *v.* DANT & RUSSELL.

(196 Pac. 461.)

**Assignments — Evidence Held to Show Lumber was Invoiced as Assignees' Property, and That Broker Knew It was Subject to Assignment.**

1. Evidence *held* to show that a lumber company, assigning all lumber on the docks or in process of loading to plaintiffs, shipped and invoiced the carloads in controversy as plaintiffs' property to a broker, and that the broker knew and recognized that they were shipped under the terms and conditions of the assignment.

**Estoppel—Broker Receiving Lumber as Property of Assignees Held not Entitled to Deny That It was Covered by Assignment.**

2. Where a lumber company, assigning lumber on the docks or in process of loading to plaintiffs with a provision that it should be shipped to a broker and the proceeds paid plaintiffs, shipped and invoiced two carloads as plaintiffs' property, the broker which received and accepted them, knowing that they were shipped under the assignment, was bound to account to plaintiffs and could not deny that such lumber was on the docks or in process of loading so as to be covered by the assignment.

**Chattel Mortgages—Assignment of Lumber to Secure Debt Held in Effect a Chattel Mortgage.**

3. An assignment of lumber to secure the payment of a debt, with the agreement that it should be shipped to brokers to whom the assignor had been shipping lumber and the proceeds paid the assignee by the brokers, was in legal effect a chattel mortgage good as between the parties and as against the brokers having notice of its purpose and intent.

**Account — Suit Against Lumber Brokers by Assignee of Lumber Shipped for Sale Held Within Jurisdiction of Equity.**

4. Where a lumber company assigned lumber to secure a debt with the provision that it should be shipped to brokers to whom the company had been shipping and the proceeds paid the assignee by the brokers and the brokers with knowledge of the assignment received and accepted the lumber, but refused to account to the assignee for the proceeds, and the assignee did not know what the proceeds were, equity had jurisdiction of a suit for an accounting.

From Multnomah: FRED W. WILSON, Judge.

Department 1.

The plaintiffs are partners doing a logging business under the name of Montgomery Brothers. The defendant is an Oregon corporation with its prin-

cipal office in the City of Portland. For cause of suit, it is alleged that in the year 1918, the plaintiffs were engaged in the cutting and delivering of sawlogs to the sawmill of the Commonwealth Lumber Company, located at Nekoma, Oregon, at the agreed price of $6.50 per thousand feet, for which it received payment except for the logs delivered in the month of September and three days in October, and during that period it cut and delivered logs for which there is due and owing the plaintiffs $2,184.23. That on October 14th, 1918, while the lumber company was in possession of the logs and the lumber cut therefrom, and was engaged in sawing the logs and loading the lumber on the cars which were to be shipped to the defendant, for the purpose of securing payment of plaintiffs' claim, the lumber company "assigned and conveyed the said described lumber to the plaintiffs, under the name of Montgomery Brothers, which assignment was in writing, and, among other things, recited that the assignment was made to secure the plaintiffs the payment of the said sum of $2,184.23, and further recited that it was understood between the Commonwealth Lumber Company and the plaintiffs that the lumber should be loaded and shipped to Dant & Russell, at Portland, Oregon, and that said Dant & Russell should pay the plaintiffs for said lumber. That a copy of said assignment was immediately sent to the defendant, and received by it, and the defendant acknowledged and accepted the said assignment, and paid thereon to the plaintiffs the sum of $900, which was payment for three carloads of said lumber." That there were five carloads of lumber, for three of which the defendants paid the plaintiffs, and no more, and "that there is now due and owing from the defendant to plaintiffs the pro-

ceeds of the said two unpaid for carloads of lumber, less the reasonable commissions and charges to be deducted therefrom. That the plaintiffs do not know and are unable to say what the proceeds of the said two carloads of lumber were, but that this is known to and within the knowledge of the defendant.'' It is then alleged that plaintiffs have no plain, adequate, or speedy remedy at law, and that they are entitled to an accounting from the defendant ''and to a judgment for whatever sum may be shown on said accounting to be due the plaintiffs,'' and they pray for a decree against the defendant for that amount. The answer admits the partnership, that the defendant is a corporation, and denies all other allegations of the complaint, and as a further and separate defense alleges that the Commonwealth Lumber Company was engaged in operating the sawmill at Nekoma; that it had induced the defendant to advance it large sums of money upon the agreement and understanding that it ''would furnish lumber to the defendant upon its order'' and that the defendant should sell the lumber and use the proceeds thereof to apply upon the indebtedness of the lumber company to the defendant which was then about $9,000 Copies of the letter of the Commonwealth Lumber Company to the defendant dated October 14, 1918, and of the purported assignment by the lumber company to plaintiff to secure its claim of $2,184.23 and of a letter from Smith & Bryson, attorneys representing the plaintiff, are all incorporated in and made a part of the defendant's answer. Also a letter from the defendant to the lumber company of October 28th. The purported assignment of the lumber company recites:

"That we, the Commonwealth Lumber Company of Nekoma, Oregon, in consideration of the sum of $2,184.23, do hereby assign and convey unto the Montgomery Brothers, a logging firm of Nekoma, Oregon, the following described property:

"1 carload of lumber consisting of 18,763 ft. of 12x12s, car number of same being 66797.

"Also 1 carload of 3x12s from 12 to 32 ft., car number 315; also all other merchantable lumber on docks of Commonwealth Lumber Co. at Nekoma, Oregon, which is now in the process of loading.

"This assignment is made to secure the said Montgomery Brothers the payment of the sum of $2,184.23.

"It being understood by and between the parties hereto that all of the said lumber shall be loaded and shipped to Dant & Russell, of Portland, Oregon, and that said Dant & Russell shall pay the Montgomery Brothers for said lumber."

It is then alleged that the defendant did not accept the assignment of October 14th, "unless said letter set forth above to the Commonwealth Lumber Company, together with the fact that the defendant paid Montgomery Brothers for said two cars of lumber mentioned in said assignment, and also another carload of lumber, constitutes an acceptance." That the lumber company later shipped two carloads of lumber to the defendant to sell as a broker and deduct its reasonable charges and apply the balance upon the money due and owing from the lumber company to the defendant as it had been doing for a long time past, and that there were no instructions from anyone that the two carloads were shipped to the defendant for the benefit of the plaintiffs and that the defendant "did not agree to receive two carloads of lumber for the benefit of Montgomery Brothers, or anybody other than the Commonwealth Lumber Company and the defendant." It prays that the com-

plaint be dismissed, and that it have a decree for its costs and disbursements. The reply admits the correspondence as alleged and denies the remaining allegations of the further and separate answer. Upon such issues testimony was taken in open court and a decree was rendered to the effect that the defendant should file an account of the moneys it had received from the two carloads of lumber numbers 6003 and 40,075, together with its charges and commissions, and that upon such account being filed and the amount determined, the plaintiffs should have judgment therefor against the defendant and for the costs of the suit, from which it appeals, contending that the complaint does not state a cause of suit and that equity does not have jurisdiction; "There is no written acceptance * * there was no delivery of the lumber, * * there was no notice to the defendant that the lumber attempted to be sued for was ever assigned to the plaintiffs or ever was shipped to the defendants on behalf of the plaintiffs, and the defendant never accepted it and agreed to pay the plaintiffs," that the court erred in overruling its motion to dismiss the suit "upon the ground that the plaintiff has an adequate remedy at law."      AFFIRMED.

For appellant there was a brief over the names of *Mr. Conrad P. Olson* and *Mr. Ralph R. Duniway,* with an oral argument by *Mr. Olson.*

For respondents there was a brief over the names of *Mr. John M. Pipes, Mr. Martin L. Pipes* and *Mr. George A. Pipes,* with an oral argument by *Mr. John M. Pipes.*

JOHNS, J.—On October 14, 1918, at the time the lumber company made the above purported assignment, it wrote the following letter to the defendant:

"Nekoma, Oregon, Oct. 14, 1918.
"Attention: Mr. Chase E. Dant.
"Dant & Russell,
  "Portland, Oregon.
"Gentlemen:
· "We are enclosing you herewith invoice for one car of 12x12s to N. H. & H. Ry. Co.
  "We are also enclosing you an assignment of this car of lumber which you will please honor and pay the proceeds of said car to the said Montgomery Brothers at Swiss Home, Oregon. * *
  "We are enclosing you herewith a copy of assignment that we are giving Montgomery Brothers to assure them of payment of their last month's logging. You will please write them a guarantee that you will pay this to them, as fast as the invoices come in."

The important question is the legal force and effect of the purported assignment and how it was treated and what was done after its execution. The defendant admits that it received and accounted to the plaintiffs for three carloads of lumber under the terms of that instrument. The plaintiffs contend that it embraced "all other merchantable lumber on docks of Commonwealth Lumber Company at Nekoma, Oregon, which is now in process of loading"; and that the two cars, numbers 6003 and 40,075, now in dispute, are a portion of the lumber thus described. The complaint is drawn upon the theory that the instrument in question is an assignment of all of such lumber to the plaintiffs and plaintiffs now contend that in legal effect it is a chattel mortgage. There is no serious dispute as to the amount of plaintiffs' claim against the Commonwealth Lumber Company, in fact, the instrument itself specifies the amount of the claim. It appears that pay-day was on the 10th of each month. That is to say, on October 10th, the

lumber company should pay plaintiffs for all logs which were delivered during the month of September. On October 12th, Will Montgomery, one of the plaintiffs, had the following conversation with the manager of the lumber company:

"I went to him and I says, 'What are you going to do about paying us?' And he says, 'I cannot pay you until I get the airplane cars.' And I says, 'I would be foolish to let you ship these cars out of here unless he could pay for them.' And I says, 'Pay me or I will tie the lumber up here to-day.' And he says, 'That would be hard on us, but,' he says, 'I will give you an assignment of all this lumber to Dant & Russell, and, he says, 'Dant & Russell can pay you the checks as fast as the lumber goes out.' And so we agreed to do that."

It was under such conditions that the alleged assignment was executed and the three carloads of lumber were shipped to the defendant, for which it accounted to the plaintiffs. October 26, 1918, E. N. Poe, the wife of the manager of the lumber company, wrote a letter to Charles E. Dant, an officer of the defendant, in which among other things she says:

"You understand, do you not, that the assignment sent for Montgomery Bros. includes pay for logs— put into and up to date, which is not according to contract, as they are only supposed to receive pay up to the 10th. * * Do you not think that the check on one of the cars for which I am now handing you the invoices—should be placed in the bank for me to check out in paying our current bills?"

This letter was written at or about the time the last two carloads now in question were shipped, and is conclusive evidence that they were invoiced to the defendant under the terms and conditions of the purported assignment. In answer to this letter and on

October 28th, the defendant, among other things, wrote the lumber company as follows:

"We agree with you that it is very poor business to be assigning invoices, but we have no voice in the matter. These invoices were assigned, we received a copy of the assignment both from Montgomery Bros. and also a lawyer in Eugene. We are sending the cars to San Francisco to be sold, and will remit for them just as soon as we find out what we are going to get for them. If you desire, we will remit Montgomery Bros. $500 on account at once and a final settlement as soon as the cars are sold, as we cannot tell just what we are going to get out of them, the way matters stand now, as the cars have not yet been sold."

November 30th, the defendant wrote H. W. Eaton:

"We are unable to tell you that we will remit to you for this carload of lumber, for the reason that there is an assignment out against it in favor of Montgomery Bros., which in turn Mr. Kahn has notified us not to consider, but the assignment is nevertheless out and we prefer not to make any promises, as we do not want to pay bills twice."

November 29th the defendant wrote Smith & Bryson, who were then acting for the plaintiffs:

"Will say that we have been advised by Mr. Kahn to remit no money to Montgomery Brothers."

As a final result the defendant refused to pay or account to the plaintiffs for the two carloads of lumber,. and, among other things, it now contends that those two cars were not loaded with lumber which was in the docks at Nekoma, or "in process of loading," on October 14th, at the time of the assignment.

Although the instrument on its face purports to be an assignment, yet its purpose and intent was to turn over and deliver to the plaintiffs the specified lumber at the dock to secure the payment of plaintiffs' claim

against the lumber company. The real dispute is whether the two carloads of lumber in question were embraced within the description. The evidence shows that within a very few days after the assignment was made an attachment was levied on all of the property of the lumber company, but the date of the attachment is not specified. It also shows that the sawmill was shut down prior to the attachment, but the testimony is indefinite and uncertain as to how long it had then been closed. It also appears that at the time the mill was shut down there were seven carloads of lumber on the dock and that the last two cars were delivered to and shipped out by the assignee of the lumber company in the July following. It is not shown how much lumber was cut by the mill after the assignment to the plaintiffs on October 14th. There is evidence tending to show that there were at least five carloads of lumber on the dock at that time. The above letter of Mrs. Poe to the defendant and the letter of the defendant to the company, of October 28th and its letter to Eaton of November 30th, are strong evidence that both the lumber company and the defendant knew and recognized that the two cars of lumber were invoiced, shipped to and received by the defendant under the terms and conditions of the assignment, and that, if that instrument was valid and enforceable, the net proceeds from the lumber should be paid to the plaintiffs. By the terms of that writing the lumber was to be shipped to the defendant as brokers, and the shipment was made for the use and benefit of the plaintiffs. The defendant was to sell the lumber and convert it into money and pay the net proceeds to the plaintiffs. In its letter to the lumber company of October 28th, the defendant says:

"If you desire we will remit Montgomery Brothers $500 on account at once and a final settlement as soon as the cars are sold."

1, 2. The evidence is conclusive that the lumber company shipped and invoiced the two carloads in question as the property of plaintiffs and that the defendant knew and recognized the fact that they were shipped under the terms and conditions of the purported assignment, and that, having received and accepted them, it was then its duty to account to the plaintiffs for the proceeds of those two carloads, under the terms and conditions of the assignment. Under all the surrounding facts and circumstances, the defendant cannot at this time deny that the lumber in those two cars was not embraced or included in the lumber specified and defined in the assignment.

It was vigorously contended in the lower court and in this court that the plaintiffs had a complete and adequate remedy at law, and that equity did not have jurisdiction. The lumber was shipped to and received by the defendant as a broker for the plaintiffs, to whom it never did render a statement as to the net proceeds or the amount of its charges and commissions and refused to make any statement.

3. In legal effect, the purported assignment was a chattel mortgage given to the plaintiffs to secure the payment of the amount of their claim against the lumber company. It was good as between the parties and the defendant had notice of the purpose and intent and the reasons why it was given. In fact, it recognized the validity of the instrument and accounted to the plaintiffs for the first three carloads of lumber shipped under its terms and provisions.

4. The instrument does not provide as to how it should be enforced or the manner of its foreclosure.

The lumber company shipped and invoiced the lumber in question to the defendant under the terms and provisions of that assignment, and it received and accepted the lumber in the manner in which it was shipped and refuses to account or pay over the proceeds to the plaintiff. The complaint alleges that they "do not know and are unable to say what the proceeds of the said two carloads of lumber were, but that this is known to and within the knowledge of the defendant," and that they are entitled to an accounting from it for such proceeds. No demurrer was filed to the complaint. The answer admits that no accounting was ever made and denies any liability or the right of the plaintiffs to an accounting. Under such a state of facts, equity did have jurisdiction of the subject matter of the suit.

The decree is affirmed.            AFFIRMED.

BURNETT, C. J., and HARRIS and McBRIDE, JJ., concur.